(118 App. Div. 64)

O'NEILL et al. v. CAMPBELL et al.

(Supreme Court, Appellate Division, First Department. March 8, 1907.)

CHAMPERTY AND MAINTENANCE—ATTORNEY AND CLIENT—RETAINER—VALIDITY.
　　Code Civ. Proc. § 66, provides that the compensation of an attorney
　　for his services is governed by agreement, express or implied, which is
　　not restrained by law. Section 74 provides that an attorney shall not
　　by himself, or in the name of another person, promise or give a valuable
　　consideration to any person as an inducement to placing in his hands
　　a demand of any kind for the purpose of bringing an action thereon, and
　　section 75 makes a violation of the preceding section a misdemeanor. In
　　an action by an attorney to enforce a lien on a settlement made by his
　　client who sued for personal injuries, the client testified that an unknown
　　person came to him the day he was injured, and when he signed the re-
　　tainer, and asked him if he needed any money, and said that perhaps he
　　would call on the client within a week or so, to which the client responded
　　that perhaps he would need such person some time. Held, that it not
　　appearing whether such conversation took place before the retainer was
　　signed, or that the client was induced thereby to execute it, the retainer
　　was not shown to be invalid under the statute.
　　　Lambert and Ingraham, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Thomas J. O'Neill and another against Christopher Campbell and another. Appeal by defendant Campbell from a judgment in favor of plaintiffs. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, HOUGHTON, and LAMBERT, JJ.

William J. Moran, for appellant.
Thomas J. O'Neill, for respondents.

LAUGHLIN, J. The material facts are fully stated in the opinion of Mr. Justice INGRAHAM. It does not appear that the conversation between the client and the person who represented the plaintiffs in procuring the retainer, upon which it is sought to invalidate it, took place before the retainer was signed, or that the client was induced thereby to execute the retainer. I am of opinion, therefore, that the appellant failed to show facts sufficient to require an adjudication that the retainer was invalid.

It follows that the judgment should be affirmed, with costs.

PATTERSON, P. J., and HOUGHTON, J., concur.

INGRAHAM, J. (dissenting). The complaint alleges that on or about June 21, 1905, the defendant James Quinn, "by retainer in writing, retained and employed the plaintiffs to act as his attorneys, and to institute on his behalf an action against the defendant, Christopher Campbell, to recover damages for personal injuries sustained by the said James Quinn on June 21, 1905, while in the employ of the said Campbell, and did then and there agree with the plaintiffs that they, the plaintiffs, should receive 50 per cent. of any settlement, verdict, or recovery had in said action, and that plaintiffs should receive in addition thereto all the costs of the action recovered or to which the said James

Quinn might be entitled"; that in pursuance of this retainer the plaintiffs, as attorneys for the said Quinn, commenced an action in the Supreme Court to recover damages for the personal injuries so sustained by Quinn; that on or about the 29th day of August, 1905, "the said defendants, wrongfully contriving and conspiring to deprive these plaintiffs of their compensation for their services in said action under the agreement as aforesaid, did collusively and without the knowledge of the plaintiffs settle the said cause of action so sued upon" for the sum of $300. The relief demanded is that the plaintiffs be adjudged to have a lien upon said settlement, and that they have judgment against the defendants for the sum of one-half thereof and for such other relief as the court may deem proper. The defendant Campbell interposed an answer, which in substance was a general denial. The court found the facts as alleged in the complaint, and awarded judgment for $150 against the defendants.

One of the plaintiffs was examined as a witness, and testified to the commencement of the action of Quinn against Campbell, of the service of a summons on the defendants and the appearance of the defendant on September 18, 1905, the subsequent service of an unverified complaint, and the service of a verified answer by the defendant. Plaintiff then called the defendant Quinn, who testified that he signed the retainer, which was introduced in evidence. The accident which caused the defendant Quinn's injuries was alleged in the complaint to have occurred on the 21st of June, 1905, and the alleged retainer was dated June 22, 1905. That instrument read as follows:

"I, James Quinn, aged 42, occupation, bricklayer, the undersigned, of 310 E. 44th St., do hereby employ O'Neill & Shay counsellors at law to institute legal proceedings in my behalf against the proper defendant or respondent, to recover damages sustained by me on or about the 21st day of June, 1905, and I do hereby agree with my said attorney to pay him fifty per cent of any settlement, verdict or recovery had in said action, and he in addition thereto to receive all costs recovered or to which they may be entitled. And I agree with my said attorneys not to make any settlement unless they are present and receive their share in accordance with this agreement, and I do hereby grant to my said attorneys full power to act for me in bringing about a compromise or settlement of my case the same as if I were present.

"James Quinn."

"Dated, New York, June 22, 1905.
  "Witness:  Ridt. R. Roch.
          "David J. Wildrents."

Quinn further testified that he received $300 in settlement of his action against Campbell, and that he never paid anybody any part of it. On cross-examination the witness testified: That he never saw either of the plaintiffs before the day of trial. That the circumstances under which he signed the paper was that an unknown person came to him the day he was injured, and, when he signed the paper, asked him if he "needed anything for the house; would I need any money. I told him, 'No'; not at present, I had some money coming off a job. He [the unknown person] said all right, may be within a week or so I will come around to see you. I said, 'All right, may be I will need you some after this.' " That it was either seven or eight weeks after that before the witness saw anybody connected with the plaintiffs. That he never had any correspondence with them, and was never in

their office. That he was never asked to sign any paper other than the alleged retainer. That neither of the plaintiffs ever called upon him. On redirect examination he stated that he did not know anything about the date of the paper; that he signed it the day he was injured, and knew he was employing a firm of lawyers. This is all the evidence in the case.

The only question presented is whether this instrument was a retainer which gave to the plaintiffs a lien upon Quinn's cause of action to recover for personal injuries. Section 66 of the Code of Civil Procedure provides that:

"The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law."

This plainly means an agreement which is recognized by the law as a valid agreement. An agreement obtained for a consideration which is valid, or upon inducement which is expressly prohibited, would not be an agreement which was "not restrained by law." The relations between an attorney and his client are regulated by the title of article 2, tit. 2, c. 1, of the Code of Civil Procedure, of which section 66 is a part, and the provisions of section 66 of the Code of Civil Procedure, which provides for an agreement not restrained by law, does not include an agreement which, by a subsequent provision, is made illegal or is prohibited. Such an agreement would be an agreement restrained by law. Section 74 of the Code of Civil Procedure provides that:

"An attorney or counselor shall not by himself, or by or in the name of another person, either before or after action brought, promise or give, or procure to be promised or given a valuable consideration to any person, as an inducement to placing, or in consideration of having placed, in his hands or in the hands of another person, a demand of any kind for the purpose of bringing an action thereon."

And section 75 of the Code of Civil Procedure provides that an attorney or counselor who violates this section is guilty of a misdemeanor. If this section, therefore, was violated, or the execution of this instrument was obtained by the promise of a valuable consideration to Quinn as an inducement to place, or in consideration of having placed, in the hands of these plaintiffs this demand for the purpose of bringing an action upon it, it was an agreement which the law prohibited, and was not a retainer within section 66 of the Code of Civil Procedure.

The rules of the common law in regard to the relations between attorney and client have been abolished in this state, and the parties are left to determine the compensation of a lawyer by agreement. Such agreement, however, must comply with the further provisions of the Code of Civil Procedure. The right of the plaintiffs to recover from the defendant Campbell depends upon the plaintiffs having a lien upon Quinn's cause of action against Campbell which plaintiffs could enforce as against Quinn, when the person obtaining the execution of this retainer asked Quinn if he "needed anything for the house"; and, upon Quinn replying that he did not need money at present as he had "some money coming off a job," the person obtaining the agreement said, "All right; may be within a week or so I will come around to see you"—to which Quinn replied, "All right; may be I will need some

after this." There was, I think, a promise to Quinn to give him money if he needed it. Quinn does not testify that this promise was a consideration for his execution of this agreement, but it certainly was an implied promise to provide him with money, if he needed it, made at the time the instrument was executed, and was a violation of section 74 of the Code of Civil Procedure.

So far as the enforcement of civil rights are affected, the plaintiffs by accepting the benefits of the agreement and attempting to enforce it adopted the representations and promises that were made at the time it was executed, and they are thus seeking to enforce an agreement which was obtained under circumstances which made the person procuring it guilty of a misdemeanor. The fact that the promise to give money was indefinite, the amount and time of payment not being fixed, and the conditions under which the payment should be made not settled does not relieve the transaction from the condemnation of section 74 of the Code of Civil Procedure. It was an understanding that Quinn should receive a valuable consideration as an inducement to retain the plaintiffs to commence an action against his employer; a promise having for its object the inducing of Quinn to retain the plaintiffs as attorneys. I think an agreement thus procured is "restrained by law," and thus an agreement which gives no lien to the attorney upon his client's cause of action, and one that the court should not enforce. The object of making this promise is plain. It could have no other purpose than to induce Quinn to retain the plaintiffs, and, if a promise obtained under such circumstances is enforced, a simple method is provided for evading the prohibition contained in section 74 of the Code.

It follows that the judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

LAMBERT, J., concurs.